**In re D & G INVESTMENTS OF WEST FLORIDA, INC., Debtor.**

**No. 8:05–bk–14434–ALP.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

March 31, 2006.

Thomas C. Little, Clearwater, FL, for Debtor.

***ORDER ON CONFIRMATION, OBJECTION BY J.C. BENEFIELD TO THE DEBTOR'S PLAN OF REORGANIZATION AND MOTION FOR CRAMDOWN AS TO J.C. BENEFIELD***

(Doc. Nos. 32, 37 and 39)

ALEXANDER L. PASKAY,
Bankruptcy Judge.

THE MATTERS under consideration in this Chapter 11 case of D & G Investments of West Florida, Inc. (Debtor) are the confirmation of the Debtor's Chapter 11

Plan of Reorganization (Doc. No. 32) (the Plan), Objection by J.C. Benefield (Benefield) to the Debtor's Plan of Reorganization (Doc. No. 37), and the Debtor's Motion for Cramdown as to J.C. Benefield. (Doc. No. 39).

Benefield contends that the Debtor's Chapter 11 Plan cannot be confirmed for the following reasons: (1) the insider claims are improperly classified as unsecured claims under the Plan; (2) the treatment of each impaired class of creditors under the Plan does not meet the requirements of 11 U.S.C. § 1129(a)(7); (3) the Plan violates the absolute priority rule; (4) the Plan is not fair and equitable with respect to Benefield's claim; (5) the Plan is not feasible; (6) adequate means for its implementation are not provided by the Plan; and (7) the Plan fails to provide for the assumption of the lease agreement, the agreement which was not timely assumed by the Debtor as required by Section 365 of the Bankruptcy Code, thus, Benefield contends the lease is deemed rejected. The Debtor, pursuant to Section 1129(b)(1) of the Bankruptcy Code, seeks to cramdown the secured claim of Benefield to provide for eight (8) percent interest per annum to be paid in equal monthly installment payments of principal and interest with a twenty (20) year amortization and a twenty-four (24) month balloon from the effective date of confirmation.

## BACKGROUND

On June 1, 2004, the Debtor and Benefield entered into an Agreement for Warranty Deed (Agreement) to acquire 726 acres of vacant, undeveloped real property located at 7301 Highway 39, Plant City, Florida 33567 in Hillsborough County, Florida (Property) for the total purchase price of $5,000,000.00. (Benefield's Exhibit 2) (TR, p. 15).[1] The Agreement provided that the sum of $500,000.00 was to be applied as a down payment. (TR, p. 15). The Agreement further provided that an additional $1,000,000.00 was to be paid within one (1) year from the date of closing, June 4, 2005, and the remaining balance of $3,500,000.00 was due on June 4, 2006. (Benefield's Exhibit 2). As part of the Agreement, the Debtor was to execute a Promissory Note (the Note) in the sum of $4,500,000.00 in favor of Benefield, stating the terms of the Agreement. *Id.* On June 1, 2004, the Debtor executed the Note in the amount of $4,500,000.00 with payment terms as follows: "ONE MILLION DOLLARS ($1,000,000.00) shall be paid on June 1, 2005 plus interest at eight percent (8%) on the Four and One Half Million ($4,500,000.00), and the balance of Three Million Dollars Five Hundred Thousand Dollars ($3,500,000.00) plus interest at eight percent (8%) on the Three Million Five Hundred Thousand Dollars, shall be paid on June 1, 2006." (Benefield's Exhibit 1).

The Debtor was formed by Robert Gordon (Gordon) and Frank Donofrio (Donofrio). Gordon was and remains the President of the Debtor. (TR, p. 24). Donofrio's role as an initial co-investor was to secure the necessary refinancing of the Property prior to the June 1, 2005 payment due date. Once it was determined that Donofrio had failed to obtain the required financing, the Debtor looked to a second investor, Sandra Heffner (Heffner). (TR, pp. 24–26). Heffner also failed to obtain the needed financing of the Property. (TR, p. 27). Sometime in April or May, 2005, the Debtor contacted Anthony Amico (Amico). (TR, p. 27). In June 2005, Amico purchased Heffner's fif-

---

**1.** Trial Transcript of Final Evidentiary Hearing held on January 25, 2006. Further reference to transcript and specific page will be as follows: (TR, p. ____).

ty (50) percent share of the Debtor for $700,000.00. (TR, p. 117).

The Property, which the Debtor purchased, contained significant amounts of sand and dirt from other mining and excavation sites. Benefield, as the prior owner, sold the sand and dirt. When the Debtor took possession of the Property in June 2004, the Debtor began removing and selling stockpiled sand and dirt. (TR, p. 22). The Debtor, having failed to obtain financing, defaulted on the Note and Agreement by failing to make the June 1, 2005, payment in the amount of $1,000,000.00 plus accrued interest. On July 7, 2005, Benefield's attorney sent a letter (Debtor's Exhibit 21) to the Debtor accelerating the loan and unpaid interest at the maximum rate, thus, taking the necessary steps to foreclose on the Property under the Agreement. (TR, p. 39). The Debtor, on July 20, 2005, filed its voluntary Petition for Relief under Chapter 11.

On November 23, 2005, in his capacity as mortgagee, Benefield filed his secured claim in the amount of $4,980,959.00. The Plan classifies the Benefield claim in Class Three as a secured claim. The Plan provides that this "claim shall be paid in equal monthly payments of principal and interest with interest at 8% per annum with a twenty (20) year amortization and a balloon twenty-four (24) months from the effective date of confirmation." (Debtor's Exhibit 20). In addition, Benefield is to retain his lien until the Note is paid in full. As written, the Plan also provides that the Debtor will pay all real estate taxes and shall maintain liability insurance on the Property with Benefield as a loss payee. *Id.* Furthermore, although not part of the Plan as filed, it is agreed that Amico will guarantee the Plan payments to Benefield in the event the Debtor is unable to generate sufficient funds from the sale of sand

and dirt to make the payments. It is without dispute that the Debtor made postpetition payments to Benefield on December 20, 2005, in the amount of $270,000.00 (Debtor's Exhibit 18) and has also paid all required $30,000.00 payments under the Adequate Protection Order entered by this Court.

This Court is satisfied that the record warrants the conclusion that the Plan submitted by the Debtor meets the requirements for confirmation set forth in Section 1129 of the Code with the exception of: (1) proof of feasibility of the Plan as proposed; and (2) the ability of the Debtor to overcome the opposition of Benefield by resorting to the cramdown provision of the Code pursuant to Section 1129(b). This leaves for consideration the additional requirements for confirmation: the feasibility of the Plan pursuant to Section 1129(a)(11), and the Debtor's ability to overcome the objection to the Plan by Benefield and the cramdown process of Section 1129(b) of the Code.

## FEASIBILITY OF THE PLAN

For a court to confirm a Chapter 11 plan of reorganization, the plan must meet the requirements of 11 U.S.C. § 1129(a). A debtor must prove each element of Section 1129 by clear and convincing evidence in order to have the plan confirmed. *In re New Midland Plaza Associates*, 247 B.R. 877, 883 (Bankr.S.D.Fla. 2000). To establish feasibility the court must find that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan...." Section 1129(a)(11). The proponent of the Plan must show that the Plan "offers at least a reasonable prospect of success and ... is workable." *In re Landmark at Plaza Park, Ltd.*, 7 B.R. 653 (Bankr.D.N.J.

1980); *In re Haas*, 162 F.3d 1087, 1090 (11th Cir.1998). Feasibility is not a guarantee of success but it does require a reasonable assurance of success. *See Midland*, 247 B.R. at 885; *In re Patrician St. Joseph Partners L.P.*, 169 B.R. 669, 674 (D.Ariz.1994) ("The mere potential for failure of the plan is insufficient to disprove feasibility.").

 A determination of feasibility must be "firmly rooted in predictions based on objective fact." *In re Clarkson*, 767 F.2d 417, 420 (8th Cir.1985). Plans that involve "pipe dreams" or "visionary schemes" are not confirmable. *In re Sovereign Oil Co.*, 128 B.R. 585, 587 (Bankr. M.D.Fla.1991). Specifically, a court looks at: the earning power of the business, its capital structure, the economic conditions of the business, the continuation of present management, and the efficiency of management in ·control of the business after confirmation. *In re Immenhausen Corp.*, 172 B.R. 343, 348 (Bankr.M.D.Fla.1994).

 The Pro Forma Statements of Operations (the Statements) filed by the Debtor in support of the Plan are based on the past performance of this Debtor reflecting the income generated from the sale of sand and dirt located on the Property. There is evidence in this record that this activity is not approved by the County. In fact, the Debtor received several warnings that the operation violates the current regulations of the County considering the use of the subject property. It is also true however, that the County has not commenced any action to stop the Debtor's operation so far thus, the operation is currently ongoing. Be that as it may, it is clear that the Debtor's ultimate Plan of reorganization is not based on the continuation of its current operation of selling sand and dirt, *ad infinitum*, but based on the expectation that during the projected two-year life of the Plan the Debtor is to (1) obtain the required refinancing to satisfy the allowed secured claim of Benefield in full and (2) through the infusion of sufficient new funds necessary for the development of the projected future intended use of the land.

This Court is satisfied that, based on the financial capability of the Debtor to achieve its ultimate goal, that is, to pay off the debt owed to Benefield at the end of the two years and to develop the land and construct ranch style houses, is less than realistic and would not support the conclusion that the Plan, as submitted, is feasible for the following reasons: Gordon, as the principal of the Debtor, did not invest any funds nor did he contribute to the capital of the Debtor because he had none to invest, and there is nothing in this record to show that he does have or will have the wherewithal to fund the consummation of the Plan if the Plan is confirmed. Next, the Debtor has no plans at this time to obtain the necessary financing for this Project and has no financial commitments to achieve its long range plans. In addition, the Property is currently undeveloped and, thus far, no application for rezoning has been filed with the County. The fact of the matter is that, with the exception of engaging the services of Water Resource Associates of Tampa for the study and potential development of the land, nothing has been done to implement changes for the projected future use of the land.

It should be evident from the foregoing that the feasibility of the long range plan of reorganization cannot be found to exist if one only considers the financial capabilities of the Debtor. This being the case, the conclusion is inescapable that this Plan fails to meet the feasibility requirement, unless this Court is willing to accept the proposition that, as Amico stated orally, Amico is willing to assure that the monthly installment payments to Benefield as re-

quired under the Plan will be made in the event the funds generated from the sale of the sand and the dirt would not be sufficient to meet this obligation.

This Court has no difficulty accepting the proof that Amico is more than able to meet the monthly installment payments. According to Amico's testimony under oath coupled with his unaudited final statement presented to this Court, his current net worth is $48,836,348.00. (Debtor's Exhibit 24). Furthermore, Amico owns various businesses which include but are not limited to, a small Visa and Mastercard bank, a record company, a marina, a restaurant and various other pieces of property which have been developed or are in the process of being developed. In addition to his financial ability, Amico has been in the business of developing land, both residential and commercial, for many years. (TR, p. 120).

However, there is nothing in this record that warrants the finding and the conclusion that Amico agreed to guarantee not only the installment payments but also the final balloon payment which becomes due two years after the confirmation of this Plan. The only way this Court could find that the current Plan would be feasible would be if the Plan is amended to provide that Amico agrees to be bound by the Amended Plan and will guarantee not only the installment payments during the Plan period, but also the final balloon payment due to Benefield at the end of the period. Based on the foregoing, this Court is satisfied that the Debtor failed to establish that the Plan, as submitted and even if it is orally modified by providing the assurance of Amico of the installment payments, is not feasible.

## CRAMDOWN

Ordinarily, based on the finding and the conclusion that the Plan is not feasible, it would not be necessary to consider whether or not the Plan meets the requirements of Section 1129(b)—that is that the Plan does not discriminate unfairly and is fair and equitable. However, in order to avoid any dispute on this issue, in the event the Debtor amends its Plan and meets the requirement of feasibility, it is appropriate to consider the cramdown issue. Another requirement of Section 1129(a) is that each impaired class of claims accepts the plan. 11 U.S.C. § 1129(a)(8). Notwithstanding, a Plan can be confirmed in spite of the failure to get approval from all impaired classes through the cramdown provision of the Code. Cramdown allows the court to approve a plan over an impaired class's objection if the plan (1) meets all other requirements of Section 1129; (2) does not discriminate unfairly; and (3) is fair and equitable. 11 U.S.C. § 1129(b)(1).

A Plan is fair and equitable with respect to a secured claim if, under the Plan, the holder of the secured claim retains the lien securing the claim and receives payments over the life of the plan totaling at least the allowed amount of the claim of a value as of the effective date, of the value of the secured claim. 11 U.S.C. § 1129(b)(2)(A)(i). The requirement of payments with a value as of the effective date requires interest to offset the fact that payments are made over time, not upon the effective date of the plan. The plan may also be fair and equitable as to a secured claim if it provides for the indubitable equivalent of such claims to the secured party. 11 U.S.C. § 1129(b)(2)(A)(iii). However, the Debtor need only satisfy one of these requirements, not all three. *Midland,* 247 B.R. at 891 (citing *In the Matter of Briscoe Enterprises Ltd.,* 994 F.2d 1160 (5th Cir.1993)).

■ Under the proposed Plan, Benefield retains his lien on the subject property until the allowed secured claim is paid

in full. The Plan proposed to pay Benefield in full based on the twenty (20) year amortization of the amount due on the secured claim. While this amortization will require relatively small monthly payments and leave a large balloon at the end of a two-year period, the twenty (20) year amortization is not unreasonable based on the assurance Amico will guarantee monthly installment payments if the Plan is confirmed. The Plan further proposes the unpaid balance pays the contract rate of interest of eight (8) percent. This Court is satisfied that because of the current status of the Plan and the Debtor's past history of not performing under the contract, Benefield should be entitled to a premium, due to the risk factor involved. Therefore, the appropriate rate of interest on the balance due to Benefield should be prime plus one and a half (1.5) percent at the date of confirmation.

In sum, the Plan as submitted failed to meet the requirements for confirmation due to sufficient proof of feasibility and cannot be confirmed unless the Plan is amended. However, the Court is willing to accept and conclude that the treatments and claim of Benefield is fair and equitable and does not unfairly discriminate against Benefield.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Debtor's Motion for Cramdown as to J.C. Benefield (Doc. No. 39) be, and the same is hereby, granted. It is further

ORDERED, ADJUDGED AND DECREED that the Objection by J.C. Benefield to the Debtor's Plan of Reorganization (Doc. No. 37) be, and the same is hereby, sustained. It is further

ORDERED, ADJUDGED AND DECREED that the Chapter 11 Plan of Reorganization (Doc. No. 32), be, and the same

is hereby, denied without prejudice with leave granted to file and amended plan within thirty (30) days from the entry of this Order. It is further

ORDERED, ADJUDGED AND DECREED that in the event no Plan is filed by the Debtor within thirty (30) days from the entry of this Order, the case shall be schedule forthwith to consider the dismissal or conversion pursuant to Section 1112(b)(1) of the Code.